UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

RADAMES ORTIZ,

               Plaintiff,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

**MEMORANDUM AND ORDER**
Case No. 1:21-CV-5478

*Appearances*:
*For the Plaintiff*:
DANIEL H. FISHMAN
Chermol & Fishman LLC
11450 Bustleton Avenue
Philadelphia, PA 19116

*For the Defendant*:
BREON PEACE
United States Attorney
By: JULIA C. WALKER
Unite States Attorney's Office
Eastern District of New York
c/o SSA/OGC
601 East 12th St., Room 965
Kansas City, MO 64106

**BLOCK, Senior District Judge:**

    Radames Ortiz ("Ortiz") appeals the Commissioner of Social Security's (the "Commissioner") final decision finding Ortiz not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act. Now before the Court are Ortiz's motion for judgment on the pleadings and the Commissioner's cross-motion for judgment on the pleadings. Ortiz requests remand for a de novo hearing before a different administrative law judge ("ALJ") because he claims that the ALJ and Appeals Council members who adjudicated his

claim lacked authority to do so under the Federal Vacancies Reform Act

("FVRA"). He also claims that the ALJ's decision finding him not disabled lacked

substantial evidence and warrants remand for further proceedings or calculation of

benefits.

For the reasons described below, the Court holds that there has been no

violation of the FVRA, but Ortiz is entitled to remand for further proceedings

because the ALJ committed legal error in finding him not disabled.

## I. Procedural Background

The following facts are taken from the administrative record. Ortiz filed an

application for benefits on June 11, 2018, alleging disability beginning on May 1,

2017 due to fibromyalgia and impairments of the right shoulder, lower back, and

left elbow. After his claim was denied, he appeared at a hearing before

Administrative Law Judge Angela Banks (the "ALJ"), who on December 4, 2019

issued an unfavorable decision finding him not disabled. Ortiz's subsequent

request for review was denied by the Appeals Council on August 6, 2021, making

the ALJ's decision the final decision of the Commissioner. Ortiz requests that the

ALJ's decision be set aside and that the case be remanded for further proceedings

or the calculation of benefits.

## II. The ALJ's Appointment by Acting Commissioner Berryhill

Ortiz claims that then-Acting Commissioner Nancy Berryhill ("Berryhill") was serving in violation of the Federal Vacancies Reform Act ("FVRA"), 5. U.S.C. 3345 et seq. when she appointed the ALJ and Appeals Council assigned to his case. Specifically, he argues that Berryhill had served beyond the Federal Vacancies Reform Act's ("FVRA") 210-day statutory term allowance for acting officials when she appointed the ALJ and presiding Appeals Council judges on July 16, 2018, and that her illegal service rendered these appointments and the decisions they rendered invalid.

### A. The FVRA

The FVRA provides a "process to govern the performance of duties of offices in the Executive Branch that are filled through presidential appointment by and with the consent of the Senate when a Senate confirmed official has died, resigned, or is otherwise unable to perform the functions and duties of the office." S. Rep. No. 105-250, 105th Cong., 2nd Sess. 1998, 1998 WL 404532, at *1 (July 15, 1998). Accordingly, it allows for "temporarily authorizing an acting official to perform the functions and duties" of such an office when one becomes vacant. 5 U.S.C. § 3347. Acting officials may be designated by three distinct processes. By default, the "first assistant" under the vacant office ascends to that office in an acting capacity. 5 U.S.C. § 3345(a)(1). The FVRA also allows the President to

direct a Senate-confirmed official serving elsewhere to fill to role, or an official in the same agency who satisfies particular qualifications. 5 U.S.C. § 3345(a)(1)-(2).

Acting officials may only serve for designated periods of time, however. A promoted acting officer may serve "(1) for no longer than 210 days beginning on the date the vacancy occurs; or . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the senate." 5 U.S.C. § 3346(a)(1)-(2). When a vacancy exists during the 60 days after a Presidential transition, this 210-day period begins on the later of 90 days after the new President's inauguration or 90 days after the date the vacancy occurs. 5 U.S.C. § 3349a(b). If the first nominee for the vacant office is not confirmed, an acting official may serve for an additional 210 days and during the pendency of a second nomination, and another 210 days if that nomination fails. 5 U.S.C. §§ 3346(b)(1), (b)(2)(A)-(B).

The FVRA's enforcement provision renders all actions taken by improperly serving acting officials void: "Unless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347 . . . the office shall remain vacant" and "only the head of such Executive agency may perform any function or duty of such office." 5 U.S.C. § 3348(b)(1)-(2). "An action taken by any person" not acting in compliance with section 3345, 3346, or 3347 "shall have no force or effect." 5 U.S.C. § 3348(d)(1).

Berryhill, formerly SSA's Deputy Acting Commissioner of Operations, became the Acting Commissioner of SSA on January 20, 2017, the first day after the transition between the Obama and Trump Presidential Administrations. She served as Acting Commissioner for the ensuing 300 days, including the initial 210 days allowed under § 3346(a)(1) plus the 90-extension attributable to the vacancy existing during the first 60 days of a Presidential transition under § 3349a(b).

SSA represents that Berryhill ceased serving as Acting Commissioner on November 16, 2017, while Ortiz insists that she continued to serve after that date. Def. Mem. 20, Dkt. No. 21; Pl. Mem. 5-6, Dkt. 19. On March 6, 2018, the General Accountability Office ("GAO") issued a report concluding that Berryhill's eligibility to serve as Acting Commissioner during her initial 210-day term expired on November 16, 2017, and that she served under the Acting Commissioner title after this date in violation of the FVRA. Violation of the 210-day Limit Imposed by the Vacancies Reform Act of 1998—Commissioner, Social Security Administration, B-329853, at 2 (Mar. 6, 2018) (hereinafter, 2018 GAO Report). The report states that "the position of Commissioner should have been vacant beginning November 17, 2017" and that despite this, "SSA's website indicates that Ms. Berryhill continued serving as Acting Commissioner" after that date. *Id.*; *see also* SOCIAL SECURITY, "Social Security History – SSA Commissioners – Nancy A. Berryhill," https://www.ssa.gov/history/berryhill.html (accessed Jan. 25, 2023)

(listing Berryhill's tenure as Acting Commissioner as "January 21, 2017-June 17, 2019"). It also noted that Berryhill could continue fulfilling delegable functions of the Commissioner's office as Deputy Commissioner of Operations, her previous title. 2018 GAO Report 2. After the GOA report, Berryhill continued to lead the SSA under the title "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security," leaving the Acting Commissioner's office vacant. *See* Extension of Expiration Dates for Two Body System Listings, 83 Fed. Reg. 13862, 2018 WL 1565569 (Apr. 2, 2018) (including Berryhill's signature featuring modified title); *see also Mateo v. Berryhill*, No. CV 3:16-1057, 2018 WL 1965286, at *3 n.1 (M.D. Pa. Apr. 25, 2018) ("Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations.").

On April 17, 2018, President Trump nominated Andrew Saul to serve as the Commissioner of SSA. Berryhill resumed her tenure as Acting Commissioner during the pendency of Saul's nomination, pursuant to § 3346(a)(2) of the FVRA. 5 U.S.C. § 3346(a)(2). Berryhill served until Saul was sworn in as Commissioner on June 17, 2019 and ratified the appointment of the ALJ and Appeals Council Judges who adjudicated Ortiz's claim on July 16, 2018.

## B. Analysis

Ortiz argues that Berryhill was illegally serving when she ratified these appointments because she had served in excess of the 210-day period afforded to her by § 3346(a). In support, he cites one case from the District of Minnesota, *Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), *appeal filed*, No. 22-1601 (8th Cir. Mar. 22, 2022), which held that Berryhill was ineligible to return as Acting Commissioner during the pendency of Saul's nomination and could not ratify appointments during that period. *Brian T.D.*, 580 F. Supp. 3d at 629-32. Specifically, *Brian T.D.* found that § 3346(a)(2), which allows an acting official to serve during the pendency of a nominee before the Senate, only applies when said nomination is submitted before the initial 210-day window in § 3346(a)(1) has closed. *Id.* at 629 ("§ 3346(a)(2) does not apply to Berryhill because she was not serving as Acting Commissioner when Saul was nominated."). This interpretation understands § 3346(a)(2) as a tolling provision for the 210-day period in § 3346(a)(1), delaying the start of that window until after a nominee is no longer pending. On the other hand, the Commissioner's view is that subsection (a)(2) functions as a "spring-back" provision—"a separate permissible term of service that may be undertaken even if an officer has previously served as an acting officer pursuant to subsection (a)(1)." *Hernandez v. Comm'r*, No. 21CIV10658VBJCM,

2022 WL 18402121, at *11 (S.D.N.Y. Dec. 16, 2022), *report and recommendation adopted*, No. 21 CV 10658 (VB), 2023 WL 358780 (S.D.N.Y. Jan. 23, 2023).

Ortiz appeals to *Brian T.D.*, which interpreted subsection (a)(2) as a tolling provision modifying subsection (a)(1). In doing so, Ortiz asks this Court to go against the overwhelming majority of courts that have addressed this issue. Virtually every court to examine § 3346(a) save for the *Brian T.D.* court has held that § 3346(a)(2) does amount to a "spring-back" that allowed Berryhill to serve as Acting Commissioner while Saul's nomination was pending. *See, e.g.*, *Thomas S. v. Comm'r*, No. C21-05213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022) (holding that § 3346(a)(2) "contains a 'spring-back' provision that enabled Ms. Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018"); *Reuter v. Saul*, No. 19-CV-2053-LRR, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020), *adopted by* 2020 WL 6161405, at *6 (N.D. Iowa Oct. 21, 2020); *Nw. Immigrant Rts. Proj. v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 57-58 (D.D.C. 2020) (holding that "the FVRA permits an acting official to serve 'from the date of' a first nomination for the vacant office *and* 'for the period that the nomination is pending in the Senate,' even when acting official had already served "far more than 210 days" before said nomination (emphasis added)); *Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *4 (W.D.N.C.

8

June 15, 2022); ("Section 3346(a)(2) provided authority for Berryhill to resume service as Acting Commissioner as of the date of President Trump's nomination of Saul for Commissioner on April 17, 2018"); *Brooks v. Kijakazi*, No. 1:21CV609, 2022 WL 2834345, at *23 (M.D.N.C. July 20, 2022), *report and recommendation adopted*, No. 1:21-CV-609, 2022 WL 17832126 (M.D.N.C. Aug. 19, 2022); *Watts v. Kijakazi*, No. CV 21-2044, 2022 WL 18109797, at *15 (E.D. La. Nov. 18, 2022), *report and recommendation adopted*, No. CV 21-2044, 2023 WL 35799 (E.D. La. Jan. 3, 2023); *Lance M. v. Kijakazi*, No. 2:21-CV-628, 2022 WL 3009122, at *14 (E.D. Va. July 13, 2022), *report and recommendation adopted*, No. 2:21CV628, 2022 WL 3007588 (E.D. Va. July 28, 2022); *M.A.K. v. Kijakazi*, No. 1:21-CV-03028-JLK, 2022 WL 16855690, at *4 (D. Colo. Nov. 10, 2022); *Neale v. Kijakazi*, No. CV 21-915-SRF, 2022 WL 6111689, at *9 (D. Del. Oct. 7, 2022); *Seago v. Kijakazi*, No. 1:21-CV-136, 2022 WL 17853369, at *6 (S.D. Tex. Nov. 15, 2022), *report and recommendation adopted*, No. 1:21-CV-00136, 2022 WL 17852795 (S.D. Tex. Dec. 22, 2022).

The only in-circuit court to weigh in on the issue has stated the same. *See Hernandez*, 2022 WL 18402121, at *11. The Court opts to join this chorus.

### C. Statutory Interpretation of the FVRA

In contested issues of statutory interpretation, the Court begins "with the language of the statute itself," *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*,

566 U.S. 399, 412 (2012) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)), examining its "plain meaning . . . by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003).

The text and structure of § 3346 and the FVRA suggest that Berryhill was eligible to serve again as Acting Commissioner when Saul was nominated on April 17, 2018. Section 3346(a) provides that an acting official may serve "for no longer than 210 days" after the vacancy occurs, "or" during the pendency of a nomination submitted to the Senate. 5 U.S.C. § 3346(a)(1)-(2). No portion of the statutory text suggests that (a)(1) and (a)(2) were intended to operate as mutually exclusive alternatives. First, disjunctive clauses separated by "or" are normally read to be inclusive. *Tex. Std. Oil.*, 2008 WL 11399510, at *4 (quoting Garner, Dictionary of Modern Legal Usage 624); *see also* U.S. Senate, Office of the Legislative Counsel, *Legislative Drafting Manual* § 302, at 64 (1997) (instructing drafters to "use 'or' between the next-to-last criterion and the last criterion to indicate that a thing is included in the class if it meets 1 or more of the criteria"). Clauses separated by the disjunctive "or" are also usually interpreted to "have separate meanings" which are placed "on an equal footing" relevant to each other. *Loughrin v. United States*, 573 U.S. 351, 359 (2014); *see also Mizrahi v. Gonzales*, 492 F.3d 156, 164 (2d Cir. 2007) ("It is a standard canon of statutory construction

that words separated by the disjunctive ['or'] are intended to convey different meanings unless the context indicates otherwise."); 1A Singer, *Sutherland Statutory Construction* § 21:14 (7th ed.) ("courts presume that "or" is used in a statute disjunctively unless there is clear legislative intent to the contrary").

The only event that must happen in order to trigger eligibility under § 3346(a)(2) is for a nomination to be "submitted to the Senate." Nothing in the section's structure or text suggests that the nomination be made during the initial 210-day period, or that (a)(2) modifies (a)(1) in any way. If Congress had intended to condition eligibility under § 3346(a)(2) in this way, it would have done so explicitly. Courts must, in ordinary circumstances, "resist reading words . . . into a statute that do not appear on its face." *Dean v. United States*, 556 U.S. 568, 572 (2009) (cleaned up). Here, the plain text of § 3346(a) indicates the 210-day window and the eligibility for service during the pendency of a nominee constitute separate, nonexclusive periods of eligibility. *See Bauer v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 2918917, at *7 (N.D. Iowa July 25, 2022) ("Congress did not qualify the use of 'or' with 'either,' which tends to indicate that the alternatives are mutually exclusive."); *Bernadette H. v. Comm'r of Soc. Sec.*, 21-CV-20586 (NLH), 2022 WL 17080743, *9 (D.N.J. Nov. 18, 2022) ("the plain reading of § 3346(a) shows that that it focuses on when an acting officer may serve rather than creating limits on service").

The *Brian T.D.* court's reasoning largely hinges on its reading of § 3346(a)'s preface, which clarifies that the section applies to "the person serving as an acting officer described under section 3345," to mean that only an official "presently" serving as an acting official can serve during a nomination. *Brian T.D.*, 2022 WL 179540, at *11; 5 U.S.C. § 3346(a). Under this reasoning, Berryhill could not serve during Saul's nomination because she was not already serving as Acting Commissioner when Saul was nominated. But the *Brian T.D.* court added the term "presently" where it does not exist in the statute, obscuring the true purpose of the prefatory clause, which is simply to "to make plain that the time limitations imposed apply to those serving under Section 3345, and not some other vacancy statute or provision." *Hernandez*, 2022 WL 18402121, at *13 (citing S. Rep. No. 105-250, 1998 WL 404532, at *14-15. It does not place an additional temporal limit on service independent from those spelled out in (a)(1) and (a)(2).

Several courts have also pointed out the "illogical result" that the *Brian T.D.* reading would produce. If § 3346(a) applied exclusively to officials who are already serving as an acting officer, said officer would need to be serving on the first date the vacancy exists for the 210-period provided by (a)(1) to apply. *Hernandez*, 2022 WL 18402121, at *13; *see Brooks*, 2022 WL 2834345, at *16 ("Had Congress drafted Section 3346(a) to provide that "the person [who served or who has served] as an acting officer as described under section 3345 may serve in

12

the office for no longer than 210 days,' [it] would provide service time limits only for individuals who had already served as acting officers, which renders the time limits nonsensical."); *see also United States v. Turkette*, 452 U.S. 576, 580 (1981) (explaining that "absurd results are to be avoided" in statutory interpretation).

The FRVA's legislative history also shows this interpretation to be Congress' intent. The bill's senate report describes § 3346(a)(2) as allowing an acting official to serve while a nomination is pending "even if the nomination is submitted after the 150 days has passed,"[1] and explains that an acting officer serving under the initial window under (a)(1) "can resume service" once a nomination is submitted. S. Rep. No. 105-250, 1998 WL 404532, at *14, *19. The Senate's interpretation also matches the FVRA's purpose to "incentivize swift nomination"—it "encourages the President to submit nominations to allow for individuals like Berryhill to resume service while a nomination is pending." *Lance M.*, 2022 WL 3009122, at *14; *Hernandez*, 2022 WL 18402121, at *14.

Further support comes from the Executive Branch's understanding of § 3346(a). The Office of Legal Counsel issued an opinion shortly after the FVRA's passage clarifying precisely how the windows for service in subsections (a)(1) and (a)(2) interact, explaining that § 3446(a)(2) contains

---

[1] The 210-day window provided by (a)(1) was initially 150 days in the version of the bill featured in the report.

a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submission of a nomination, *even if the 210-day period expired before that nomination was submitted*. If the 210-day limitation period expires before the President has submitted a nomination, the restrictions in § 3348 of the Act, which bar anyone from serving in an acting capacity, become operative . . . If thereafter the President submits a nomination, an acting officer is again able to perform the functions and duties of the office as of the date the nomination is submitted.

Guidance on Application of Federal Vacancies Reform Act of 1998, 23 Op. Off. Legal Counsel 60, 68 1999 WL 1262050 (March 22, 1999) (emphasis added).[2] A more recent report from GAO, which polices violations of the FVRA, expresses a similar understanding, explaining that an Acting Director of the Office of Science had served for 210 days and "could resume her service as Acting Director . . . when the President submitted [a new] nomination to the Senate." Violation of the 210-Day Limit Imposed by the Federal Vacancies Reform Act of 1998: Department of Energy, Director of Office of Science, B-328888, at 1-2 (Mar. 3, 2017); *see also* Violation of the 210-Day Limit Imposed by the Federal Vacancies Reform Act of 1998, B-326480, at 1-2 (March 30, 2015) (explaining that the Acting Inspector General, who had served beyond 210 days, could once more

---

[2] Memos from the Office of Legal Counsel lack legally binding or precedential force, bearing closer resemblance to Executive Branch policy decisions. However, the Court examines them here as evidence of the Executive's understanding of a law that it has the responsibility to enforce and carry out, and that is central to the operation of the Executive Branch and the federal government as a whole. *See* Kimberly L. Wehle, *"Law and" the OLC's Article II Immunity Memos*, 32 STAN. L. & POL'Y REV. 1, 36-41 (2021).

legally serve in that position if "a nomination is submitted to the senate" due to the FRVA's "spring-back provision"). The two branches tasked with carrying out the FVRA's mandates and ensuring the efficient functioning of government have clearly and repeatedly expressed an understanding that § 3346 contains a "spring-back" provision, and the windows for service under (a)(1) and (a)(2) are not mutually exclusive. Seeing as this understanding matches that suggested by the plain meaning of the FVRA's text and the overwhelming majority of courts, the Court is compelled to share it.

Ortiz zeroes-in on the period of Berryhill's service as Acting Commissioner after November 17, 2017 and before Saul's nomination, suggesting that this unauthorized service rendered her powerless even after Saul's nomination. However, nothing in the FVRA's text disqualifies an official who improperly served past the initial 210-day window from properly serving again once a nomination is submitted. The above-cited reports by OAG say exactly that—an official improperly serving in an acting capacity beyond the window permissible under § 3446(a)(1) may still later properly serve under (a)(2). Ortiz suggests that this interpretation would render subsection (a)(1)'s 210-day limit without "real meaning." Pl.'s Rep. at 7, Dkt. No. 19. But he ignores the separate allowance to serve while a nomination is pending under § 3446(a)(2)—Berryhill's ratification of the Appeals Council judges and ALJ occurred in July 2019, while she was lawfully

serving during Saul's pending nomination. The fact of her impermissible service before this is inconsequential. Recognizing her authority during Saul's nomination has no bearing on the enforceability of § 3446(a)(1).

The Court finds that § 3346(a)(2) constitutes a "spring-back" provision allowing for the same official to serve as an acting officer for 210 days pursuant to § 3346(a)(1) *and* during the pendency of a nomination under § 3346(a)(2). This interpretation is supported by the statute's plain text, its legislative history, the understandings of the Executive Branch bound by it, and virtually every court interpreting it. Because Berryhill was lawfully serving during the pendency of Saul's nomination when she ratified the appointment of the Appeals Council judges and the ALJ who adjudicated Ortiz's claim, they did not lack the authority to exercise authority over his proceedings and he is not entitled to a de novo hearing before a different ALJ.

### III. The ALJ's Disability Finding

**A. Legal Standard**

District courts have jurisdiction to review a final decision of the Commissioner under 42 U.S.C. § 405(g). The reviewing district court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rucker v. Kijakazi*, 48 F.4th 86, 90-

91 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). A reviewing district court is limited to this inquiry; it may not conduct a de novo review or substitute its own judgment for that of the ALJ. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence, or if the decision is based on legal error," *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 342 (E.D.N.Y. 2010) (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

"[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's legal conclusions, however, are given less deference, and are not deferred to by reviewing courts "where an error of law has been made that might have affected the disposition of the case." *Hilsdorf*, 724 F. Supp. 2d at 342 (quoting *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)) (alteration in original). Legal error, including a "'[f]ailure to apply the correct legal standards" or a "failure to adhere to the applicable regulations" justifies reversal.

While remanding for further proceedings is ordinarily the favored remedy upon reversal, remanding for calculation of benefits is appropriate when the record provides "persuasive proof of disability and a remand for further evidentiary

proceedings would serve no purpose." *Demars v. Comm'r of Soc. Sec.*, 841 F.

App'x 258, 263 (2d Cir. 2021) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d

Cir. 1980)).

## B. The ALJ's Decision

The Commissioner uses a five-step inquiry to evaluate disability claims

under the Social Security Act, determining

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity" assessment,
> whether the claimant can perform any of his or her past relevant work
> despite the impairment; and (5) whether there are significant numbers
> of jobs in the national economy that the claimant can perform given the
> claimant's residual functional capacity, age, education, and work
> experience.

*Estrella v. Berryhill*, 925 F.3d at 94 (*quoting McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014)). The plaintiff bears the burden of persuasion for the first four

factors; if they are successful, the burden shifts to the Commissioner during

analysis of the fifth factor. *Id.*

In the first three inquiries, the ALJ found that Ortiz had not been engaged in

substantial gainful activity since his alleged onset date on May 1, 2017, and that he

suffered from severe impairments including fibromyalgia, degenerative joint

disease, and degenerative disc disease, which "significantly limit [his] ability to

perform basic work activities." A.R. 21.[3] The ALJ found that several other

impairments, including depressive disorder, anxiety disorder, and panic disorder,

did not cause more than a slight limitation on Ortiz's ability to perform basic

mental activities for work, and as such, were not severe impairments. None of

Ortiz's impairments were found to match the criteria of any listed impairments at

step three of the analysis.

At step four, the ALJ found that Ortiz retained the residual functional

capacity to perform light work under 20 C.F.R. § 404.1567(b), with the exceptions

that he could "occasionally balance, stoop, crouch, kneel, crawl, and climb ramps

or stairs, but can never climb ladders, ropes, or scaffolds." A.R. 24. According to

the ALJ, Ortiz could "reach overhead occasionally and in all other directions

frequently with the right dominant upper extremity," and could not operate motor

vehicles on the job, "work around unprotected heights, or with moving mechanical

parts." A.R. 24-25.

The ALJ went on to find that, based on the testimony of a vocational expert,

Ortiz could perform his past relevant work as a substance abuse counselor, and that

he was therefore not disabled. She based this finding on a hypothetical question

she posed to the expert based on Ortiz's conditions, to which the vocational expert

---

[3] All references are to the administrative record.

answered that someone with Ortiz's limitations could perform his past relevant work as a substance abuse counselor.

## C.  Analysis

Remand is warranted because the ALJ committed multiple legal errors in reaching legal conclusions, including impermissibly substituting her own opinion for that of medical professionals and failing to further develop the record where apparent gaps existed. 20 C.F.R. §§ 404.1520c(c).

An ALJ is not permitted to substitute her own judgement of a claimant's condition for that of a medical professional. *See Balsamo v. Chater*, 142 F.3d 75, 91 (2d Cir. 1998) ("the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion . . . he is not free to set his own expertise against that of a physician') (cleaned up)); *Van Dyne v. Saul*, No. 20-CV-260 (MKB), 2021 WL 1210460, at *15 (E.D.N.Y. Mar. 31, 2021) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician and has committed legal error") (cleaned up).

The ALJ substituted her own opinion of Ortiz's condition for those of two of the Commissioner's consultative doctors. Two examining doctors in October 2018 found limitations in Ortiz's physical and mental capabilities. First, Dr. Lyudmila Trimba, a physiatrist, found that Ortiz had mild to moderate limitations in sitting,

20

standing, walking for prolonged periods, climbing steps, pushing, and pulling heavy objects, and found that Ortiz would experience daily schedule interruption due to fibromyalgia. Dr. Clementina Porcelli, after a consultative psychiatric evaluation, concluded that "there may be mild to moderation limitation with regard to understanding, remembering and applying complex directions and instructions," as well as "interacting adequately with supervisors, co-workers and the public and with sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine, regular attendance at work and with regulating emotions, controlling behavior and maintaining well being [sic]." A.R. 358. She diagnosed Ortiz with unspecified depressive disorder, unspecified anxiety disorder, panic attacks and posttraumatic stress disorder, and found that he suffered from generalized pain and stiffness as well as blurry vision.

The ALJ isolated information from the record to undermine these recommendations. She prioritized her own subjective determination of Ortiz's condition by labelling Dr. Trimba's report as "generally mild," A.R. 27. The ALJ also found the report by Dr. Porcelli not persuasive because it conflicted with her opinion of Ortiz's mental status as "benign." *See* A.R. 22 ("The opinion is not

supported by the benign mental status findings . . . and is not accepted as persuasive").

The ALJ also committed legal error by faulting the medical experts for failing to provide sufficient evidence of their opinions. It is an ALJ's duty, not the doctors' responsibility, to flesh out any inconsistencies presented in the record. *See Calzada v. Astrue*, 753 F. Supp. 2d 250, 259 (S.D.N.Y. 2010) ("[I]f a physician's finding in a report is believed to be insufficiently explained, lacking in support with the physician's other reports, the ALJ must seek clarification and additional information from the physician to fill any clear gaps before dismissing the doctor's opinion."); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the record."). The ALJ did not accept Dr. Porcelli's opinion as persuasive because it was "not supported by the benign mental status findings or the claimant's lack of treatment," A.R. 22, and discounted Dr. Trimba's opinion because the limits she found were "not supported by [Ortiz's] endorsements to Dr. Trimba, or her generally mild findings on examination." A.R. 27. By failing to further investigate these inconsistences, the ALJ fell short of her duty to develop the record.

Remand is appropriate because the ALJ came to a conclusion based on legal error. If not for these errors, the ALJ may have found Ortiz to be disabled. *See*

*Skrodzki v. Comm'r of Soc. Sec. Admin.*, 693 F. App'x 29 (2d Cir. 2017) ("A remand for a rehearing is proper when further findings would so plainly help to assure the proper disposition of the claim") (cleaned up).

## IV. CONCLUSION

Ortiz's motion for judgment on the pleadings is granted, the Commissioner's cross-motion for judgment on the pleadings is denied, and the case is remanded for further proceedings in accordance with this Order.

**SO ORDERED.**

  /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 7, 2023